Spear, J.
By this proceeding the defendant, James M. Hneston, is called upon to show by what authority he assumes to hold the office of assistant prosecuting attorney for the county of Lucas.
The act of April 2,1882 (79 Ohio L. 79), provides for the appointment of assistant prosecuting attorneys in the counties of Hamilton, Cuyahoga, and Lucas. In the first named county, the presiding judge is given the power to appoint, in the second named, the judges of the court of common pleas are given that power, and in the last named (Lucas), the provision is that “ in Lucas county the senior judge of the court of common pleas residing therein, may ■appoint an assistant prosecuting attorney.”
The relator claims the office of assistant prosecuting attorney by appointment October 9, 1885, by one of the resident judges of Lucas county; the defendant claims the same office by appointment November 3, 1885, by another resident judge of said county.
The question is, which of the two judges thus assuming to ¡appoint an assistant prosecuting attorney was the “ senior judge?”
The facts in the ease are agreed upon, and, in so far as they are deemed material, are as follows: At the dates of the two appointments named there were three judges of the court of common pleas residing in the county of Lucas, one who was elected in October, 1883, and entered upon a full term of five years from November 11, following; another who was elected in October, 1884, and entered upon a full term of five years on the 24th of that ■¡month, and a third elected at the same election, and who 'entered upon a full term of five years on the 9th day of February, 1885. On the 9th day of October, 1885, the judge whose term commenced November 11, 1883, appointed the relator, Irvin Belford, as assistant prosecuting *3 attorney. The relator immediately took the oath of office, entered upon the discharge of the duties, and continued uninterruptedly until the 3d day of November, 1885, on which day the judge who entered npon his present term February 9, 1885, holding, at the time the criminal term, refused to recognize the relator, and appointed the defendant to that office, who at once took the oath of office, and entered upon the discharge of the duties of such assistant in that court. The judge who made this last appointment was, at the time, the judge longest in continuous service, having entered upon his first term February 9, 1875, upon his second term February 9, 1880, and upon his present term February 9, 1885, having served continuously during the time, and all of the time residing in Lucas county. The first act authorizing an assistant prosecuting attorney for Lucas county was passed May 11,1878. Appointments were made under this law, but they are not understood to be of consequence here. April 2, 1880, the law was amended, giving the appointment of assistant to the prosecuting attorney himself. That law remained in force until April 7, 1882, when the present law took its place. At the time of this last change there were three judges resident in Lucas county, one whose term began November, 1878, one whose term began November, 1879, and one whose term began February, 1880, the latter being the same judge, serving his second term, who made the appointment of defendant November 3, 1885. The first appointee under this law was the defendant, Hu esto n. He was appointed October, 1882, by the judge who commenced his first term November, 1878, and the appointment was acquiesced in by everybody. Again, in October, 1883, the same judge appointed the same gentleman, and again everybody acquiesced. In October, 1884 (the term of the judge who made the previous appointments having expired), the defendant was appointed by the judge who made the appointment November 3,1885. The defendant served one year under that appointment, and there *4 was a vacancy in. the office at the time of the appointment of the relator, October 9, 1885.
Whether the act of the judge making the last appointment of the defendant; considering that the relator was at the time an officer de facto, in possession of the office, and performing its duties, was or was not valid, irrespective of-the question of who was the senior judge, we are not called upon to determine, because the relator prefers to waive that point and rest his case upon the claim that his appointment was made by the judge who at the time ivas the senior judge of Lucas county.
The question to be determined is, whether the senior judge was the one who had served longest under his present commission, or the one who had been longest in continuous service? It is not insisted by any one that the word “ senior” applies necessarily to the judge who is oldest In years. Iudeed we are not advised as to the age of the several judges.
On the part of the defendant the contention is that “ senior judge ” is one longest in continuous service ; this because, neither by the constitution nor by statute, is any distinction made between common pleas judges, nor any power vested in one that is not in all; that the word “ senior” has no technical legal significance, and that the popular definition in common use, and as given by lexicographers, to wit: “one that is older in office, or one whose first entrance upon an office was anterior to that of another,” must prevail.
On the part of the relator the contention is, that “ senior judge” means the oldest in commission ; this because, first, the words have a technical meaning in Ohio legislation, given to them by the history, custom, and uniformity of legislation of the state in reference to the judiciary; second, adopting the word senior as commonly defined, or given by lexicographers, “ elder” or “ eldest” as applied to the service of judges in Ohio, it will mean the same thing ; and third, that this construction is the one given to the word by contemporaneous local interpretation, and, being a local *5 Ihw, such mode of arriving at its meaning is the best method, and is controlling.
We ai'e of opinion that the term “senior judge” in this statute applies to the judge who, at the time an appointment of assistant prosecuting attorney is to be made, has served the longest under his present commission, and will endeavor to state some considerations which lead to that conclusion. This becomes an easy task by reason of the aid derived from the oral arguments and briefs of counsel, supplemented by the brief of defendant in person. The case is one of first impression in this state, and has been reasoned out upon principle by the counsel. The reasoning in support of the relator’s position upon what we regard as the controlling point in the case, is so satisfactory, that we are content to adopt it in substance in treating of that question.
The question is not necessarily what that term means by its general use, nor what it means in legal parlance out of Ohio, but what it means here in this state, and in this statute. We are, if we can, to ascertain what the legislature intended by its use in this law. For, “ while the popular or received import of words furnishes a general rule for the interpretation of statutes, they must be interpreted according to the intent and meaning, and not always according to the letter; and where the intent can be discovered, it should be followed, though such construction seem contrary to the letter of the statute.”
The word “senior” has not received interpretation, so far as known, judicially in this state, and the only other use of the word in our legislation that is recalled is in section 8054 of the Revised Statutes, wherein it is provided that “ the command of any military force called into service under the provisions of this title shall devolve upon the senior officer of such force; ” section 8048, providing that “ an officer who has served continuously in the same grade for more than one term, . . . shall take rank from the date of his first commission in that grade.” This statute applies to the military organization of the state only. And though *6 it be assumed that by the word “ senior” here is meant the one longest in continuous service, it by no means follows that the legislature, in usiug the word in connection with an entirely different subject-matter, intended it should have the same meaning. In the one case it would naturally be inferred that the term would follow military usage, while in the other its meaning would be gathered from practice in civil affairs, and especially in affairs connected with the judiciary.
Reference to the definitions given by lexicographers scarcely aids in getting at the meaning of the word “senior” in this statute, for it is hardly probable that the legislature gave much attention to the study of etymology in the adoption of the word, or to the definition given in the dictionaries. The meaning is given by Webster, as adjective, “ one more advanced in life; one older in office or dignity; prior in age or rank; elder; ” and as noun, “ one older in office, or whose entrance upon an office was anterior to that of another.” Taking this language alone, it may be construed to mean, not one who entered upon his present term'of office first, but one who has been longest in the office. But no meaning of a word which has received a construction, by law or uniform custom, can be adopted from the dictionaries in conflict with that construction. And where a word is reconcilable with law or established custom in the particular manner in which it is used, a different meaning can not be given to it upon the authority of a lexicographer. Hence, if we can ascertain that this word has a meaning in Ohio in reference to the judiciary, understood by custom and the provisions of the law relatlating to courts, it is reasonable to assume that the legislature made use of it intending it should receive that meaning in any construction of the law. ■
It is believed that neither in our present constitution nor laws is importance attached to the length of service of a judge beyond that of his existing term ; but every-where, in the debates in the convention which framed the constitution of 1851, and in legislation following its adoption, the *7 ranking judge, or chief-justice, however designated, was he whose term of service, not holding by appointment or to fill a vacancy, would soonest expire.
Looking back to see how the subject was treated .prior to the date mentioned, we find that the general assembly which met immediately after the adoption of the constitution of. 1802 (which instrument created the supreme court to consist of three judges, with power to the assembly to add another), by act of April 15,1803, entitled “ an act organizing the judicial courts,”- provided that one of the judges of the supreme court “shall be commissioned by the governor chief judge of said court, and the other two judges, and all future judges of said court, shall have precedence according to the date of their commissions, or where their commissions are of the same date, then according to their respective ages.” As to the common pleas courts, the constitution created them each to consist of a president and associate judges. An act amending the previous statutes on the subject of courts, passed February 16,1810, provided that the judges of the supreme court, ‘ shall have precedence according to the date of their commissions, or .where their commissions are of same date, then according to their respective ages; and the judge entitled to precedence shall be styled chief judge of said court.” This remained unchanged until the act of February 18,1824, in which the idea of precedence by reason of continuous service was first recognized, the act providing that the four judges shall have precedence according to the dates of their commissions, but in case either shall be elected for two or more terms in succession, then he shall take precedence according to the date of his first commission, etc. These provisions were again embodied in the act of February 7,1831, and remained in force until the law was abrogated by the adoption of the constitution of 1851. And, thus having before them the earlier and the later policy on the subject, and having the question of precedence in the supreme court to provide for, the legislators of the assembly of 1852 discarded the later and returned to the earlier policy, providing in the act relating to the'or *8 ganization of courts of justice, and prescribing their powers and duties, passed February 19, 1852, substantially what is now embodied in sectiou 411, Revised Statutes, that “the judge of the supreme court having the shortest time to serve, not holding by appointment or election to fill a vacancy, shall be the chief justice, and as such shall preside at all terms of the supreme court; and in case of his absence, the judge having in like manner the next shortest time to serve shall preside in his stead.”
This change by the legislature is significant, and the purpose is clear ; to give no dignity or importance to length of service merely, but to determine rank wholly by the length of service under the present authority or term of office. So, too, with the circuit court. Section 4516 (81 Ohio L. 170), makes precisely the same provision as to a presiding judge in that court. No direct legislative provision is made as to precedence among judges of the courts of common pleas. A sufficient reason for this omission is found in the fact that the court is held by one judge only, and, therefore, each judge is a presiding judge. The law in this respect can scarcely be regarded as throwing light upon the question one way or the other.
In passing, we may refer to section 848 of the Revised Statutes, regarding county commissioners, which provides that the one whose term first expires shall be president, and shall preside at the meetings of the board.
In Ohio the term of a judge is fixed, determined. As to judges of the supreme court, and court of common pleas, it is five years, as to the circuit court it is six years, and as to the probate court three years. The term of the common pleas judge is made five years by the constitution itself. There is no such thing as holding over; no provision is made that the incumbent (when elected) shall continue until his successor is elected and qualified, and if there is a failure to elect, the office is vacant. For every purpose the judge goes out at the expiration of the fixed term; if he is a judge after that, it is because of a new election and qualification, and he is just as much a new judge as though *9 he had succeeded another. One term can not be tacked upon another for the purpose of adding to rank, title, power or pay. And with this view the term “ elder in office” seems reconcilable with the idea simply of being elder in office under his present title to his office. Sections 555 and 556 make it the duty of one elected to a judicial office, withiu twenty days after receiving his commission, to take the oath required by the constitution and laws of the state, and transmit a copy of such oath to the clerk, and when he does not so qualify and transmit, he shall be deemed to have refused the office, and it shall be considered vacant. One whose former term has just expired, or is about expiring, is not exempted from the requirements of this statute. He is just as much bound to qualify in the manner provided as a new man would be, and if he fails in that he fails in his office. No power remains in his hands beyond the one term by reason of the authority given, and as to power beyond that it depends wholly upon the new lease, upon the new election, and the new qualification. This is the policy of our constitution, and our law, and the legislature must be held to have framed this statute in the light of these provisions, and of this policy.
Again, it can hardly be assumed that the legislature intended to place, and to continue the duty of appointment upon any one man. It could not be presumed by that body that any judge would be continued beyond his present term, and his successor would be junior to those of his associates whose terms expired at an earlier date. And in such case the change in the personnel of the judges would of necessity change the seniority, no two of the commissions bearing the same date.
The opinion of the justices to the governor and council, 126 Mass. 603, was cited by counsel for defendant. The opinion quotes from the Massachusetts statute : “ Whenever a vacancy occurs in the office of sheriff in any county, the senior deputy sheriff in service shall perform all the duties required by law to be performed by the sheriff, until the office is filled in the manner required by law.” In the *10 opinion the court say, that the legislature hag, by the use of the words “senior deputy sheriff in service” designated the one who has been longest in office continuously. How the deputies were appointed is not shown to us, nor is it shown whether they continued under their original appointment until removed, or their appointment died with their principal, and they were reappointed with each new sheriff. The use by the legislature of the words “in service ” would imply that standing alone the word “ senior” would not mean oldest in service; if the word “senior” alone implied longest in continuous service, then the words “in service” would be clearly superfluous, and we are not swift to charge the general court of Massachusetts with embodying words in the statutes which have no meaning. In the language of Judge Thurman, in Bloom v. Richards, 2 Ohio St. 402, “ mere idle and useless repetitions of meaning are not to be supposed, if it can be fairly avoided.”
But though this opinion be as strong for the defendant as 'is claimed, yet while considering the weight to be given to it, we should keep in mind that in Massachusetts the policy of the law has been from colonial days, and is now in large measure, to continue men in office for long periods; the courts are supplied with judges for life, and in many respects the reverse of the Ohio policy is favored there. This is believed to be true of the state of Connecticut and of others of the older states.
If it were profitable to look outside of our own state to find precedents, the research of counsel has supplied us with a long line, in which, in some cases the fundamental law, and in others the statutes, embody the same policy as is shown by the provision of our law as to rank in the supreme and circuit courts.
The law of Nevada provides that the senior justice in commission shall be chief justice, and in case the commission of any two bear the same date, they are to determine by lot who shall be chief justice. In Kentucky the constitution provides that the judge having the shortest time to serve shall be styled the chief justice of Kentucky. Sira *11 ilar provisions are found in Oregon, Michigan, Georgia, West Virginia, Mississippi, Missouri, California and Nebraska, while in nineteen states there is no provision for the selection of a chief justice, no such officer seeming to be known to the law, and in the remaining states the matter is either determined by the governor, who appoints the judges, or by the legislature which elects them, or the choice is made by the court itself. In the newer states of the west and south, the policy of short, determinate terms is favored, while in many of the older Atlantic states the policy of priority by reason of service is recognized and encouraged. In our judgment the policy of Ohio is clearly in accord with that of the former class of states, and in the light of this policy, and of the custom which has grown up under it, we think the language of the law in question should be construed.
And whatever of respect and deference may be justly due to long experience and honorable service on the bench, such considerations can not, as we think, be dignified into a claim of rank by right, and thus outweigh the clear policy of the law.
We are not impressed with the conelusiveness of the claimed local construction of the law, based upon the apparent recognition by the judges of Lucas county,'and the defendant in this case, of the validity of the appointments made October, 1882, and October, 1883, both of which were made by a judge who assumed to be the senior judge because he held by what was, at the time, the oldest commission, while another judge — the one who made the appointment of the defendant in this case — had been many years the longest in continuous service. The point is not without significance, but had those appointments been made by the judge then longest in continuous service, and thus an exactly opposite local construction given to the law, we would hardly be willing to hold that such construction should-prevail as against satisfactory reasons for a contrary view. The statute of 1882 can not be treated as an ancient one in such sort that the opinion of sages *12 learned in the law at the time of its passage would be binding upon courts in this year of grace, 1886, nor is the claim of contemporaneous local construction aided by the doctrine of stare decisis, no rule of or right to property having obtained, and surely not by the application of any rule of estoppel. However, the fact that the local construction, so far as one had been given prior to the last appointment, favors the claim of the relator, is an additional assurance that the conclusion we have reached does no substantial injustice.
But, however impressed with the significance of local construction, we can not rest our decision upou that. "We prefer, rather, the other ground. In consonance with history and legislation, and with custom in the state, and by analogy with the rule as to precedence furnished by law for the supreme and circuit courts, the term “ senior judge ” in this statute means the judge who has served the longest under his present commission.

Judgment of ouster.